IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ANTONIO M. | : | |
| v. | : | NO. 24-CV-1520 |
| MARTIN O'MALLEY,<br>Commissioner of Social Security | : | |

**O P I N I O N**

SCOTT W. REID  DATE: September 3, 2024
UNITED STATES MAGISTRATE JUDGE

  Antonio M. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI"). He has filed a Request for Review to which the Commissioner has responded. As explained below, I conclude that the Request for Review should be granted and the matter to obtain treatment notes from the relevant time period from Kyle Faye, DNP, CRNP, and re-evaluate her decision in the light of these notes.

I. *Factual and Procedural Background*

  Antonio M. was born on January 1, 1974. Record at 228. He completed high school and some college. Record at 259. He has no past relevant work. Record at 258. On November 1, 2021, he filed an application for SSI, asserting disability as of December 31, 2018, as a result of osteoarthritis in the spine, sciatica, and depression. Record at 228, 232, 258.

  Antonio M.'s application for benefits was denied originally, and upon reconsideration. Record at 106 (April 4, 2022), 122 (November 2, 2022). He then requested a hearing *de novo*

before an Administrative Law Judge ("ALJ"). Record at 151. A hearing was held in this matter on May 16, 2023. Record at 38.

On June 27, 2023, the ALJ issued a written decision denying benefits. Record at 21. The Appeals Council denied Antonio M.'s request for review on February 13, 2024, permitting the ALJ's decision to stand as the final decision of the Commissioner of Social Security. Record at 1. Antonio M. then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s)

> that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record. *Id*. The RFC assessment reflects the most an individual can still do, despite any limitations. SSR 96-8p.

The final two steps of the sequential evaluation then follow:

> (iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make the adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.   *The ALJ's Decision and the Claimant's Request for Review*

The ALJ determined that Antonio M. suffered from the severe impairments of degenerative disc disease of the lumbar and cervical spine, depression and anxiety. Record at 23. She decided that none of Antonio M.'s impairments, and no combination of impairments, medically equaled the severity of one of the listed impairments. Record at 24. She then wrote:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR §416.967(b) except the claimant could sit, stand, and/or walk for six hours in an eight-hour workday. He could occasionally lift and/or carry up to twenty pounds and frequently up to ten pounds. Regarding postural activities, the claimant has no limitation with climbing stairs or balancing, but could frequently stoop, kneel, crouch or crawl. He could never climb ladders, ropes and scaffolds. The claimant could occasionally reach overhead with his bilateral upper extremities, frequently grasp, finger, feel and frequently push or pull with his bilateral upper extremities. He could occasionally push or pull with his bilateral lower extremities. With regard to environmental limitations, the claimant should avoid exposure to extreme cold, wetness, vibration, unprotected heights or hazards. He could comprehend, understand, remember,

and carry out simple, routine tasks and instructions, make simple work-related judgments and have occasional contact with coworkers, supervisors and the public. The claimant could adjust to occasional simple changes in a routine workplace.

Record at 26.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ determined that Antonio M. could work in such jobs as final assembler of optical goods, dowel inspector, or table worker. Record at 33. She decided, therefore, that he was not disabled. *Id*.

In his Request for Review, Antonio M. maintains that the ALJ erred in discounting the opinion of a health care provider with an illegible signature without making reasonable efforts to ascertain the name of the provider. He also argues that the ALJ erred in failing to adequately evaluate the medical opinion from the unknown provider.

IV.     *Discussion*

    A.     *The Opinion of the Unidentified Medical Source*

The record in Antonio M.'s case includes a Physical Residual Functional Capacity assessment dated May 11, 2023. Record at 782-798. The signature on the form is illegible. Record at 798. However, it is followed by the letters DNP and CRNP. *Id*. In his reply memorandum, Antonio M. finally discloses that the person who completed the form was Kyle Faye, DN, CRNP, at the Woodlawn Avenue Health Center in Philadelphia. The undersigned was able to reach the same conclusion with very minimal research, based on the several mentions of Dr. Faye as Antonio M.'s general practitioner, and the fact that he is a CRNP with a Doctorate in Nursing. Record at 690, 703. Https://www.fpcn.com>profiles>kylefaye (visited August 19, 2024).

4

At the hearing before the ALJ, however, Antonio M.'s counsel was not able to locate the assessment in her files, much less identify its signer. Record at 62. The ALJ asked counsel to "let her know" by the end of the hearing, but counsel was not able to do that. Record at 63, 71. It is not clear whether counsel asked Antonio M. for help. The ALJ told counsel: "All right, not a problem." Record at 71.

Apparently, counsel never provided the ALJ with the name of the reporting practitioner. In her decision, the ALJ wrote:

> A provider whose signature is unreadable, but who identified themselves as the claimant's primary care provider since 2017, completed a Physical residual functional capacity on May 11, 2023 and opined that the claimant could occasionally or frequently lift/carry less than ten pounds. He said the claimant could stand and/or walk for less than two hours in an eight-hour workday and must periodically alternate sitting and standing to relieve pain or discomfort. They stated that the claimant was limited in his ability to push or pull with his lower extremities. His narrative stated that what the claimant reported, rather than relying upon objective evidence. The provider opined that the claimant could never perform postural activities due to a history of well-documented degenerative disc disease of the lumbar and cervical regions. He said that standing and walking are difficult and that postural activities would induce severe pain. It was indicated that the claimant was limited in his ability to reach, handle, finger or feel due to radiculopathy. The provider opined that the claimant should avoid all exposure to environmental conditions due to degenerative disc disease and ADHD/focus issues that would make environmental hazards and distractions more dangerous. Due to his narcotic prescription, heights and use of machinery would not be advised. The provider claimed to have a longstanding relationship with the claimant and that the claimant has reported symptoms dating back to 2017.

Record at 31.

The ALJ concluded: "The undersigned does not find this opinion persuasive as it is unclear who wrote it. Further, it is not supported by treatment records or consistent with objective testing. The record does not support elimination of all environmental conditions and there is no evidence of ADHD." *Id*.

In his original Request for Review, Antonio M. still did not come forward with Dr. Faye's name, and has still not come forward with a specific argument that Dr. Faye's treatment records would have changed the ALJ's decision. Further, Antonio M. argues that the ALJ should have called Dr. Faye, or simply asked him (i.e., Antonio M.) who signed the assessment – but ignores the fact that this could even more easily have been done by his own counsel. Ultimately, it is a plaintiff's burden to furnish evidence demonstrating disability. 20 C.F.R. §416.912(a). Thus, part of this problem was caused by Antonio M. himself.

Even more importantly, the ALJ did not reject the RFC assessment solely because the signer was unidentified. She also called it unsupported (as it certainly is, since no notes from Dr. Faye were provided) and inconsistent with the rest of the record.

Despite all of this, however, without treatment notes, it was impossible for the ALJ to have known whether the assessment *could have* been supported, or whether the narrative truly "stated what the claimant reported, rather than relying upon objective evidence." Dr. Faye cited what Antonio M. "reported," but also cited his "well-documented history of degenerative disc disease in the lumbar spine and cervical region." Record at 783, 784. Clearly, his treatment notes would have been useful to the ALJ.

Thus, although Antonio M. and his counsel played no small part in the confusion surrounding the May 11, 2022, RFC assessment, the ALJ did not assist Antonio M. in developing the record by directing counsel to submit the name of the completer after the hearing, rather than misleadingly stating "that's not a problem" – obviously, it was a problem. Alternatively, the ALJ could have looked into the matter herself and fairly easily discovered Dr. Faye. Either way, it would then have been obvious that the ALJ could not issue a well-founded decision without Dr. Faye's treatment notes.

An ALJ has a duty to develop the record even where a claimant is represented by counsel, because a hearing before an ALJ is a fact-finding proceeding, and not an adversarial one. *Andino v. Kijakazi*, Civ. A. No. 21-2852, 2022 WL 1135010 at *4 (E.D. Pa. Apr. 18, 2022); *Howard v. Kijakazi*, Civ. A. No. 20-4412, 2021 WL 4893347 at *8 (E.D. Pa. Oct. 20, 2021); *Felder v. Colvin*, Civ. A. No. 16-1231, 2016 WL 8739674 at *3 (E.D. Pa. Nov. 1, 2016), *approved and adopted* 2017 WL 1397312 (E.D. Pa. Apr. 19, 2017); *Maniaci v. Apfel*, 27 F. Supp. 2d 554, 556-7 (E.D. Pa. 1998).

As the Honorable Richard A. Lloret has explained:

> The responsibility to develop the record adequately exists whether the plaintiff is represented or not. *Plummer v. Apfel*, 186 F.3d 422, 434 (3d Cir. 1999) (represented plaintiff); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (represented plaintiff). The duty to fully develop the record does not disappear merely because a claimant is represented by counsel. *See Baker v. Bowen*, 886 F.2d 289, 292 n.1 (10th Cir. 1989) ("[T]he ALJ ... has the affirmative duty to fully and fairly develop the record regardless of whether the applicant is represented by an attorney or a paralegal."); *Craig v. Commissioner of Social Security*, 218 F. Supp.3d 249, 262-63 (S.D.N.Y. 2016) ("The ALJ must develop the record even where the claimant has legal counsel."). Where the failure to adequately develop the record prejudices the plaintiff, it is error. *Reefer v. Barnhart*, 326 F.3d 376, 380-1 (3d Cir. 2003) (Plaintiff was prejudiced by the failure of the ALJ to obtain medical records, including a head CT, documenting brain stem surgery and a stroke).

*Howard v. Kijakazi*, Civ. A. No. 20-4412, 2021 WL 4893347 at *8 (E.D. Pa. Oct. 20, 2021). Therefore, it would be misguided to dismiss this claim, given the responsibility of the agency toward Antonio M.

B. *The ALJ's Evaluation of the May 11, 2023, RFC Assessment*

Antonio M. is wrong in arguing that the ALJ failed to assess the May 11, 2023, RFC Assessment in terms of supportability and consistency under 20 CFR §404.1520c. On the contrary, the ALJ specified that the assessment was unsupported by any treatment notes, as indeed it was not. Record at 31. The ALJ went on to specify that it was not supported by the treatment records or objective testing that she considered elsewhere in her opinion. *Id*.

Notably, Dr. Faye's RFC assessment is radically inconsistent with the results of an examination performed by consulting physician Ann Greenberg, MD, who examined Antonio M. on September 27, 2022. She observed that Antonio M. had a normal gait, and a narrow-based, erect, stance. Record at 676. He could walk on heels and toes and "tandem walk" without difficulty. *Id*. He could squat 70%. *Id*. Antonio M.'s joints were stable and non-tender and he had no sensory deficits and full strength in all extremities, with no muscle atrophy noted. Record at 676-7. His hand and finger dexterity were intact, and he had a full grip strength. Record at 677. Further, Dr. Greenberg found Antonio M.'s range of motion to be within normal limits as a whole, and in his wrists and hands, specifically. Record at 685-6, 687-8. She opined that he could lift up to 10 pounds frequently, and 20 pounds occasionally, and could carry no more than ten pounds due to pain. Record at 678.

According to Dr. Greenberg, Antonio M. could sit for four hours at a time, for a total of eight hours in an eight-hour workday; stand for one hour at a time for a total of four hours in a workday; and walk for half an hour for a total of two hours per day. Record at 679. He could engage in occasional postural maneuvers, and could have frequent exposure to all environmental conditions. Record at 681-2. The ALJ discussed these opinions in her decision. Record at 29-30.

Further, Jennie-Corinne Baublitz-Breneborg, D.O., an agency physician who reviewed Antonio M.'s medical files on reconsideration, opined that Antonio M. could frequently lift or carry ten pounds, and occasionally lift or carry twenty pounds. Record at 116. He could stand and/or walk for six out of eight hours in a workday. *Id*. He could not climb ladders, ropes, or scaffolds, but could climb stairs without limitation, and kneel, crouch, or crawl frequently, as well as stoop occasionally. Record at 117. He could be exposed to fumes, humidity, and noise

without limitation, but needed to avoid concentrated exposure to extreme heat or cold, vibration, and hazards such as machinery or heights.  Record at 118.  The ALJ found Dr. Baublitz-Breneborg's opinions persuasive.  Record at 32.

As to ADHD, the record contains only two pages of notes from a mental health provider, and they are not treatment notes but confirmation of a May 31, 2023 appointment with a Physician's Assistant, and a medication list.  Record at 780-781.  No diagnoses are listed, although it could be noted that Adderall is included as one of Antonio M.'s prescriptions.  Record at 781.  However, Gregory Kramer, Ph.D., a consulting mental health expert who met with Antonio M. on September 27, 2022, diagnosed him only with unspecified depressive and anxiety disorders.  Record at 696.  The ALJ was correct, therefore, in saying that there was no medical evidence that Antonio M. suffered from ADHD.  The mere fact of a prescription for Adderall is insufficient, without more, to show he suffers from this disorder.

Given the foregoing, the possibility exists that the ALJ will not change her opinion upon reviewing Dr. Faye's treatment records.  Nevertheless, Antonio M. is entitled to a full consideration of the pertinent records, including treatment notes from Dr. Faye.

IV.     *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be GRANTED and the matter be remanded for the ALJ to obtain treatment notes from the relevant time period from Kyle Faye, DNP, CRNP, and re-evaluate her decision in the light of these notes.

BY THE COURT:

*/s/ Scott W. Reid*
_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE